## COMPTON v. STATE OF ALABAMA.

ERROR TO THE SUPREME COURT OF ALABAMA.

No. 175.   Argued April 20, 1909.—Decided May 17, 1909.

Unless the State demanding the return of an alleged fugitive from justice furnishes a copy of an indictment against the accused or an affidavit before a magistrate as provided by § 5278, Rev. Stat., the executive of the State upon whom the demand is made, may decline to honor the requisition; and, in the absence of such indictment or affidavit, no authority is conferred upon him by § 5278, Rev. Stat., to issue his warrant of arrest for a crime committed in another State.

An affidavit before a notary public is sufficient under § 5278, Rev. Stat., upon which to base a demand for return of a fugitive from justice if such officer is, as he is regarded in Georgia, a magistrate under the law of the State.

Where the papers upon which the requisition for the return of an alleged fugitive from justice is based are regarded as sufficient by the executive authorities of both the States making, and honoring, the demand, the judiciary should not interfere on *habeas corpus* and discharge the prisoner upon technical grounds unless it is clear that the action plainly contravenes the law.

152 Alabama, 68, affirmed.

THE facts are stated in the opinion.

(1)

*Mr. John M. Chilton* for plaintiff in error:

The Federal statute recognizes the existence of a pending prosecution in the demanding State, in one of two forms: First, an "indictment found"; and next, a preliminary prosecution pending before a magistrate.

Assuming for argument, that an information may take the place of an indictment, we have here neither an information nor an indictment, though the Solicitor General certifies that two copies of an indictment accompanied his demand upon the Governor for extradition. Having no indictment or information, there must appear some proceeding pending before a "magistrate." This affidavit does not disclose one. A notary public is a mere commercial officer who may administer affidavits but has no authority to issue process of arrest or to make a warrant returnable before any other officer.

But while it may have warranted an information, it did not follow that one would be filed or should be filed. Whereas, in an indictment or warrant on preliminary examination it does follow that the defendant shall be arrested, tried and convicted, committed or discharged. A preliminary affidavit, in short, is a prosecution commenced before some magistrate, while the affidavit here is not a prosecution commenced, but is only authority for the commencement of a prosecution, if it reaches that dignity.

A mere affidavit before a notary public, returnable before no officer and which had not been acted upon in the procurement or filing of an indictment or information and upon which no information or indictment follows as of course, cannot be treated as an "affidavit made before a Magistrate"; and no other authority is needed to the proposition than the plain word of § 5278, Rev. Stat.

*In re Waller,* 36 Fed. Rep. 681, is not an authority here. In that case, the City Court of Milwaukee had jurisdiction of particular offenses that could be exercised on affidavit made before the court, and it was held that under those circumstances

the court acquired jurisdiction; that "before" meant "in the presence of."

*Mr. Alexander M. Garber*, Attorney General of the State of Alabama, and *Mr. Thomas W. Martin* for defendant in error:

The provision in § 5278, Rev. Stat., for the production before the Governor of the asylum State, of a copy of the indictment found, or the affidavit made before a "magistrate" of the demanding State means nothing more than that it shall be made reasonably to appear by affidavit that the prosecution has been begun. Assuming that the letters "N. P." affixed to the signature of the officer before whom the affidavit was made indicated that he was a notary public, the certificate of the clerk of the Superior Court of Atlanta, under his seal of office, to the effect that the affidavit had been filed in his office, within itself shows, and certainly when taken in connection with the provisions of § 11 of the act creating the Criminal Court of Atlanta, distinctly shows that the prosecution was begun pursuant to the rules of law provided for that court. The act simply provided for the making of the affidavit as the initial step in the beginning of the prosecution—not before any particular officer, but before anyone authorized to administer oaths, upon which affidavit an information might be filed and trial had.

The Constitution of the United States does not prescribe the form in which the charge must be made; and while the statutes speak of an indictment found or an affidavit made before a magistrate, it cannot be intended to exclude a case where the charge is in the form of a criminal information, as in this State all offenses are triable by information filed by the District Attorney of the proper county, and it will be presumed that the demanding State has authorized prosecution by information. *Hooper's Case*, 52 Wisconsin, 699.

When prosecution by information has been adopted by a State making demand for requisition, it must be considered *prima facie* evidence of the crime charged against the accused

under the laws of that State. *In re VanSciever,* 42 Nebraska, 772; *State* v. *Richardson,* 34 Minnesota, 115; *State* v. *Hufford,* 28 Iowa, 391; *Compton* v. *State,* 152 Alabama, 68.

MR. JUSTICE HARLAN delivered the opinion of the court.

By an affidavit, proper in form and substantially sufficient in its statement of facts, made before a notary public of Fulton County, Georgia, Compton, the plaintiff in error, was charged with having committed the offense of being a common cheat and swindler. The Solicitor of the Criminal Court of Atlanta officially notified the Governor that the accused had been so charged and had fled to Alabama, and a requisition on the Governor of Alabama was asked for the extradition of Compton to the end that he might be brought back to Georgia to be tried according to law for the offense charged.

The Governor of Georgia thereupon made a requisition on the Governor of Alabama who, having received the requisition, issued his warrant for the arrest of Compton, if to be found in Alabama, and his delivery into the custody of the agent of Georgia. Having been arrested under that warrant by a sheriff, the accused sued out a writ of *habeas corpus* before the judge of the City Court of Montgomery, Alabama, and sought discharge from custody upon the ground that he was illegally restrained of his liberty. The return by the sheriff to the writ justified the detention of Compton under the requisition of the Governor of Georgia and the warrant of arrest issued by the Governor of Alabama.

Upon the hearing of the case before the judge of the Montgomery City Court the accused demurred to the return, and the demurrer having been overruled, he was ordered into the custody of the agent of Georgia for extradition pursuant to law. From that order Compton prosecuted an appeal to the Supreme Court of Alabama, and that court affirmed the order of the Montgomery City Court.

It is contended that the affidavit upon which the Governor of Georgia based his requisition, although certified by him to

be authentic, was not in compliance with the Revised Statutes of the United States; that the proceedings in Georgia were not sufficient to authorize the Governor of Alabama to issue his warrant of arrest; and that the proceedings on the hearing of the petition for *habeas corpus* did not show that there had been an indictment against Compton or such an affidavit before a magistrate of Georgia charging the accused with crime, as is required by the statutes of the United States.

In our judgment the only material question not substantially covered by the former decisions of this court is that raised by the objection that the affidavit in Georgia on which the Governor of that State based his requisition was made before a notary public and not before a "magistrate," as required by the Revised Statutes of the United States enacted in the execution of the constitutional provision relating to fugitives from justice. This specific objection was raised by the assignments of error for the Supreme Court of the State, but that court did not seem to have regarded it as of sufficient gravity to be specially noticed in its opinion. But as the objection is covered by the assignment of errors for this court, and as it asserts a right under the laws of the United States, we deem it appropriate to meet and dispose of it.

The proceedings against Compton were had under § 5278 of the Revised Statutes, as follows: "Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State or Territory to which said person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having commited treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the State or Territory from whence the person so charged has fled, it shall be the duty of the executive authority of the State or Territory to which said person has fled to cause him to be arrested and secured, and to cause notice of the arrest to be given to the executive authority making such demand, or to

the agent of such authority appointed to receive the fugitive, and to cause the fugitive to be delivered to such agent when he shall appear. If no such agent appears within six months from the time of the arrest, the prisoner may be discharged. All costs or expenses incurred in the apprehending, securing and transmitting such fugitive to the State or Territory making such demand, shall be paid by such State or Territory."

Undoubtedly, the statute does not make it the duty of a Governor to issue a warrant for the arrest of an alleged fugitive from justice, unless the executive of the demanding State produces to him either a copy of an indictment against the accused in the demanding State or an affidavit before a *magistrate* of such State charging the fugitive with the commission of crime in the State making the demand. It is, we think, equally clear that the executive of the State in which the fugitive is at the time may decline to honor the requisition of the Governor of the demanding State if the latter fails to furnish a copy of an indictment against the accused, or of any affidavit before a magistrate. But has the executive of the State, upon whom the demand is made for the arrest and extradition of the fugitive, the power to issue his warrant of arrest for a crime committed in another State, unless he is furnished with a copy of the required indictment or affidavit? We are of opinion that he has not, so far as any authority in respect to fugitives from justice has been conferred upon him *by the statute of the United States*. The statute, we think, makes it essential to the right to arrest the alleged fugitive under a warrant of the executive of the State where the alleged fugitive is found that such executive be furnished, before issuing his warrant, with a copy of an indictment or an affidavit before a magistrate in the demanding State, and charging the fugitive with crime committed by him in such State. It is therefore material under this interpretation to inquire whether the affidavit, made the basis in this case of the requisition by the Governor of Georgia, and which is certified to be authentic, was such an affidavit as the Revised Statutes of the United States required (in the

absence of an indictment) to be produced to the Governor of Alabama as the basis of any warrant of arrest that he might issue.

The record shows that the affidavit, a copy of which accompanied the requisition of the Governor of Georgia, was made, as we have already said, before a notary public. Was that sufficient under § 5278 of the Revised Statutes requiring an affidavit to be made before a "magistrate," that is, before one who could properly be deemed a magistrate within the meaning of the law of the State under whose authority he acts as notary public, and in which his duties are discharged? In a general sense a magistrate is a public civil officer, possessing such power, legislative, executive or judicial, as the government appointing him may ordain. In a narrow sense, a magistrate is regarded—perhaps, commonly regarded—as an inferior judical officer, such as a justice of the peace. 2 Bouvier Law Dic. 92. But the appellation of magistrate "is not confined to justices of the peace, and other persons, *ejusdem generis,* who exercise general judicial powers; but it includes others whose duties are strictly executive." Anderson's Dictionary of Law, 643, 644. In *Gordon* v. *Hobart*, 2 Sumner, 401, 405, the question was whether an alderman of Philadelphia, who was invested by law with all the powers and authority of a justice of the peace, was not to be deemed in the strictest sense a magistrate, within the meaning of a statute relating to the acknowledgment of deeds "before a justice of the peace or magistrate." Mr. Justice Story said that the alderman was to be deemed a magistrate within the statute referred to; "for," said he, "I know of no other definition of the term 'magistrate' than that he is a person clothed with power as a public civil officer"—citing 1 Black. Com. 146.

Could a notary public be deemed a magistrate in Georgia? If so, § 5278 of the Revised Statutes was satisfied; for, that statute must be held to mean that a person may be regarded as a magistrate, before whom the required affidavit can be made, if he is so regarded under the law of the State where the

alleged crime was committed.   Upon looking into the Code of
Georgia we find that provision is made for the appointment of
notaries public by the judges of the Superior Courts, on the
recommendation of the grand juries of the several counties.
Their term of office is four years, and they are commissioned
by the Governor, and are "*ex officio* justices of the peace, and
shall be removable on conviction for malpractice in office."
2 Code of Georgia, § 4052, p. 982.   They are designated as
commissioned notaries public.   And it is further provided
that "Justices, and Notaries Public who are *ex officio* justices
of the peace shall keep separate dockets of all civil and crimi-
nal causes disposed of by them," and "lay their dockets be-
fore the grand juries of their respective counties on the first
day of each term of the Superior Court for inspection." *Ib.*
1895, p. 93.

In view of these provisions of the Code of Georgia, we hold
that the notary public, before whom the affidavit in that
State was made, may be regarded as a magistrate within the
meaning of § 5278 of the Revised Statutes of the United States.
Such, it must be assumed, was the view of the Governor of
Alabama when issuing his warrant of arrest under the author-
ity of that statute.   When it appears, as it does here, that the
affidavit in question was regarded by the executive authority
of the respective States concerned as a sufficient basis, in law,
for their acting—the one in making a requisition, the other in
issuing a warrant for the arrest of the alleged fugitive—the
judiciary should not interfere, on *habeas corpus,* and discharge
the accused, upon technical grounds, and unless it be clear that
what was done was in plain contravention of law.

No question other than the one herein disposed of is of such
importance or difficulty as to require notice at our hands, and
we adjudge that as the Supreme Court of Alabama did not by
its final order deny any right secured to the plaintiff in error
by the Constitution or laws of the United States, its judgment
must be affirmed.

*It is so ordered.*