## Ex parte NASH.

District Court, W. D. Arkansas, El Dorado Division.

Oct. 27, 1930.

S. E. Gilliam and Walter L. Brown, both of El Dorado, Ark., for petitioner.

J. K. Mahony, of El Dorado, Ark., for respondent.

YOUMANS, District Judge.

J. W. Harmon, the sheriff of Union county, Ark., has made a return to the writ of habeas corpus issued out of this court requiring him to show cause why he held in custody the petitioner, Horace Nash.

The return of the sheriff states that Nash is held under the authority of a warrant issued by the Governor of Arkansas upon the demand of the Governor of Louisiana for the removal of said Nash to Union parish, La., to answer to a charge of felony in said parish. The charge is evidenced by an information filed by the prosecuting attorney of the district of the state, which district includes Union parish.

Nash has filed a demurrer to the return, which demurrer, omitting caption and signature, reads as follows:

"Comes your petitioner, Horace Nash and demurs to the response filed herein, and for cause states:

"1st. That the petition and proceedings for requisition show that they are based entirely on bill of information and that the warrant of arrest and extradition recites that it is issued **on the basis of bill of information.**

"2nd. That there is shown nowhere in the extradition proceedings an indictment or affidavit made before a magistrate."

It is conceded that the demanding papers of the Governor of Louisiana include the information filed in Union parish, La., against Nash.

The contention on the demurrer is that the information cannot be made the basis of a demand for interstate extradition, and that the Governor of Arkansas cannot legally recognize such a demand.

Clause 2, § 2, art. 4, of the Constitution of the United States, reads as follows:

"A person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on demand of the executive Authority of the State from which he fled, be delivered up to be removed to the State having Jurisdiction of the Crime."

It has been held by the Supreme Court of the United States that this constitutional provision is not self-executing. In 1793 the Congress of the United States passed an act (1 Stat. 302 [18 USCA §§ 662, 663]) prescribing the procedure by which the constitutional provision should be made effective. In construing and applying that act the Supreme Court of the United States in the case of Roberts v. Reilly, 116 U. S. 80, 6 S. Ct. 291, 299, 29 L. Ed. 544, said:

"The act of congress (section 5278, Rev. St. [18 USCA § 662]) makes it the duty of the executive authority of the state to which such person has fled to cause the arrest of the alleged fugitive from justice, whenever the executive authority of any state demands such person as a fugitive from justice, and produces a copy of an indictment found, or affidavit made, before a magistrate of any state, charging the person demanded with having committed a crime therein, certified as authentic by the governor or chief magistrate of the state from whence the person so charged has fled.

"It must appear, therefore, to the governor of the state to whom such a demand is presented, before he can lawfully comply with it—First, that the person demanded is substantially charged with a crime against the laws of the state from whose justice he is alleged to have fled, by an indictment or an affidavit, certified as authentic by the governor of the state making the demand; and, second, that the person demanded is a fugitive from the justice of the state the executive authority of which makes the demand.

"The first of these prerequisites is a question of law, and is always open, on the face of the papers, to judicial inquiry, on an application for a discharge under a writ of habeas corpus. The second is a question of fact, which the governor of the state upon whom the demand is made must decide, upon such evidence as he may deem satisfactory. How far his decision may be reviewed judicially in proceedings in habeas corpus, or whether it is not conclusive, are questions not settled by harmonious judicial decisions, nor by any authoritative judgment of this court. It is conceded that the determination of the fact by the executive of the state in issuing his warrant of arrest, upon a demand made on that ground, whether the writ contains a recital of an express finding to that effect or not, must be regarded as sufficient to justify the removal until the presumption in its favor is overthrown by contrary proof."

In the case of Compton v. State of Alabama, 214 U. S. 1, 29 S. Ct. 605, 606, 53 L. Ed. 885, 16 Ann. Cas. 1098, the Supreme Court said:

"In our judgment the only material question not substantially covered by the former decisions of this court is that raised by the objection that the affidavit in Georgia on which the governor of that state based his requisition was made before a notary public, and not before a 'magistrate,' as required by the Revised Statutes of the United States, enacted in the execution of the constitutional provision relating to fugitives from justice. This specific objection was raised by the assignments of error for the supreme court of the state, but that court did not seem to have regarded it as of sufficient gravity to be specially noticed in its opinion. But, as objection is covered by the assignment of errors for this court, and as it asserts a right under the laws of the United States, we deem it appropriate to meet and dispose of it."

It thus appears that the only question before the court in that case was whether or not the affidavit required by the act of Congress could be made before a notary public in Georgia instead of before a magistrate.

Proceeding further in the same opinion, the Supreme Court said:

"Undoubtedly, the statute does not make it the duty of a governor to issue a warrant for the arrest of an alleged fugitive from justice unless the executive of the demanding state produces to him either a copy of an indictment against the accused in the demanding state, or an affidavit before a magistrate of such state, charging the fugitive with the commission of crime in the state making the demand. It is, we think, equally clear, that the executive of the state in which the fugitive is at the time may decline to honor the requisition of the governor of the demanding state if the latter fails to furnish a copy of an indictment against the accused, or of any affidavit before a magistrate. But, has the executive of the state upon whom the demand is made for the arrest and extradition of the fugitive, the power to issue his warrant of arrest for a crime committed in another state, unless he is furnished with a copy of the required indictment or affidavit? We are of opinion that he has not, so far as any authority in respect to fugitives from justice has been conferred upon him by the statute of the United States. The statute, we think, makes it essential to the right to arrest the alleged fugitive under a warrant of the executive of the state where the alleged fugitive is found that such executive be furnished, before issuing his warrant, with a copy of an indictment or an affidavit before a magistrate in the demanding state, and charging the fugitive with crime committed by him in such state. It is therefore material under this interpretation to inquire whether the affidavit made the basis in this case of the requisition by the governor of Georgia, and which is certified to be authentic, was such an affidavit as the Revised Statutes of the United States required (in the absence of an indictment) to be produced to the governor of Alabama as the basis of any warrant of arrest that he might issue. * * *

"Could a notary public be deemed a magistrate in Georgia? If so, section 5278 of the Revised Statutes was satisfied; for that statute must be held to mean that a person may be regarded as a magistrate, before whom the required affidavit can be made, if he is so regarded under the law of the state where the alleged crime was committed. Upon looking into the Code of Georgia we find that provision is made for the appointment of notaries public by the judges of the superior courts, on the recommendation of the grand juries of the several counties. Their term of office is four years, and they are commissioned by the governor, and are 'ex officio justices of the peace, and shall be removable on condition for malpractice in office.' Georgia Code, vol. 2, § 4052, p. 982. They are designated as commissioned notaries public. And it is further provided that 'justices, and notaries public who are ex officio justices of the peace shall keep separate dockets of all civil and criminal causes disposed of by

them,' and 'lay their dockets before the grand juries of their respective counties on the first day of each term of the superior court for inspection.' Id. 1895, vol. 3, p. 93.

"In view of these provisions of the Code of Georgia, we hold that the notary public before whom the affidavit in that state was made may be regarded as a magistrate within the meaning of section 5278 of the Revised Statutes of the United States. Such, it must be assumed, was the view of the governor of Alabama when issuing his warrant of arrest under the authority of that statute. When it appears, as it does here, that the affidavit in question was regarded by the executive authority of the respective states concerned as a sufficient basis, in law, for their acting, —the one in making a requisition, the other in issuing a warrant for the arrest of the alleged fugitive,—the judiciary should not interfere, on habeas corpus, and discharge the accused upon technical grounds, and unless it be clear that what was done was in plain contravention of law."

The Code of Criminal Procedure of Louisiana contains the following provision:

"All prosecutions may be by indictment; all prosecutions for offenses not capital, shall be by indictment or by information, provided that prosecutions for all misdemeanors when conducted in the municipal or recorders' courts throughout the State may be by affidavit." Article 2.

That Code also contains the following provision:

"An information is a written accusation of crime made by the district attorney, signed by him and filed either in open court or in the office of the clerk of the court having jurisdiction." Article 5.

It thus appears that the information "in question was regarded by the executive authority of the respective states concerned as a sufficient basis in law for their act—the one in making the requisition, the other in issuing the warrant for the arrest of the alleged fugitive."

But the Supreme Court of the United States has gone further on this question. It has held that the act of Congress must be construed in the light of the constitutional provision which the act was intended to carry into effect.

In the case of In re Strauss, 197 U. S. 324, 25 S. Ct. 535, 536, 49 L. Ed. 774, that court said:

"Under the Constitution each state was left with full control over its criminal procedure. No one could have anticipated what changes any state might make therein, and doubtless the word 'charged' was used in its broad signification, to cover any proceeding which a state might see fit to adopt by which a formal accusation was made against an alleged criminal. In the strictest sense of the term a party is charged with crime when an affidavit is filed, alleging the commission of the offense, and a warrant is issued for his arrest; and this is true whether a final trial may or may not be had upon such charge. It may be, and is, true, that in many of the states some further proceeding is, in the higher grade of offenses at least, necessary before the party can be put upon trial, and that the proceedings before an examining magistrate are preliminary, and only with a view to the arrest and detention of the alleged criminal; but extradition is a mere proceeding in securing arrest and detention. An extradited defendant is not put on trial upon any writ which is issued for the purposes of extradition, any more than he is upon the warrant which is issued by the justice of the peace directing his arrest."

The opinion then proceeds to discuss cases upon the question of the removal of causes from the state to the federal courts.

The opinion in the Strauss Case then proceeds as follows:

"But such decisions, instead of making against the use in this constitutional section of the word 'charged' in its broad sense, make in its favor, because, as we have noticed, an extradition is simply one step in securing the arrest and detention of the defendant. And these preliminary proceedings are not completed until the party is brought before the court in which the trial may be had. Why should the state be put to the expense of a grand jury and an indictment before securing possession of the party to be tried? It may be true, as counsel urge, that persons are sometimes wrongfully extradited, particularly in cases like the present; that a creditor may wantonly swear to an affidavit charging a debtor with obtaining goods under false pretenses. But it is also true that a prosecuting officer may either wantonly or ignorantly file an information charging a like offense. But who would doubt that an information, where that is the statutory pleading for purposes of trial, is sufficient to justify an extradition? Such possibilities as these cannot be guarded against. While courts will always endeavor to see that no such attempted wrong is successful, on the other hand care must be taken that the proc-

ess of extradition be not so burdened as to make it practically valueless. It is but one step in securing the presence of the defendant in the court in which he may be tried, and in no manner determines the question of guilt."

In the case of Pierce v. Creecy, 210 U. S. 387, 28 S. Ct. 714, 719, 52 L. Ed. 1113, the Supreme Court said:

"But the Constitution does not require, as an indispensable prerequisite to interstate extradition, that there should be a good indictment, or even an indictment of any kind. It requires nothing more than a charge of crime."

The law of Louisiana does not require that an information signed and filed by the prosecuting attorney be sworn to. It is not classed as an affidavit. Under that law the information is put upon an equality with an indictment.

■ Under the decisions of the Supreme Court of the United States in construing and applying the interstate extradition act of Congress, the state law must be taken into account for the purpose of effecting the object of the constitutional provision.

With that view, the demurrer to the return of the sheriff must be, and is, overruled.